IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SIBU, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>BUBBLES, INC.,<br><br>      Defendant. | **MEMORANDUM DECISION and ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:11-cv-00477 DN<br><br>Magistrate Judge David Nuffer |

This case is before the magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c). The magistrate judge has reviewed Defendant Bubbles, Inc.'s Motion to Dismiss.[1] For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

## Introduction

SIBU, LLC (SIBU), a Utah limited liability company, filed this action seeking a "declaration that it is not infringing any trademark or other right of the Defendant by its use of the marks 'SIBU,' 'SIBU THE SEABUCKTHORN COMPANY,' 'sibu,' and 'SIBU Beauty' (the SIBU Marks)."[2]

Bubbles, Inc. (Bubbles) is a Virginia corporation with its principal place of business in Vienna, Virginia.[3] Bubbles operates the website located at http://www.cibuinternational.com (Website) where Bubbles offers products for sale products and takes orders.[4] The "website does not specifically target residents of Utah, it offers no special deals for residents of Utah, and has

---

[1] Motion to Dismiss for Lack of Personal Jurisdiction (Motion to Dismiss), docket no. 8, filed June 21, 2011.

[2] Complaint (Complaint) at 1, docket no. 2, filed May 26, 2011.

[3] Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction (Supporting Memorandum) at 1, docket no. 9, filed June 21, 2011.

[4] *Id.*

received only 54 orders from within the state of Utah since 2007."[5] Additionally, "Bubbles does not operate any salons in Utah and has not conducted any direct business or advertising in the State of Utah."[6]

Bubbles filed a Cancellation action on June 21, 2010 in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board.[7] That action seeks to cancel the marks as to which SIBU seeks a declaratory judgment of non-infringement.

Bubbles moves to dismiss, arguing that Bubbles is not subject to personal jurisdiction in Utah.[8] "When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[9] The court considers the allegations in the complaint to be true and resolves all factual disputes in the plaintiff's favor.[10] This order concludes that SIBU has failed to make a prima facie case that Bubbles is subject to specific personal jurisdiction in Utah.

**DISCUSSION**

SIBU has the burden of showing that Bubbles is subject to either general or specific personal jurisdiction in Utah by virtue of Bubbles' contacts with Utah. "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant."[11] Contacts must be continuous and systematic to justify general jurisdiction.[12]

---

[5] *Id.*

[6] *Id.*

[7] Exhibit A to Memorandum in Opposition to Motion to Dismiss . . . (Opposition Memorandum), docket no. 18-1, filed July 22, 2011.

[8] Motion to Dismiss at 1.

[9] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.,* 385 F.3d 1291, 1295 (10th Cir. 2004).

[10] *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988) (internal citations omitted).

[11] *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 (1984).

To find specific personal jurisdiction three requirements must be met. SIBU must show (1) defendant's actions or contacts implicate the state's long-arm statute; (2) a nexus exists between the plaintiff's claims and the defendant's actions or contacts; and (3) the application of the state's long-arm statute satisfies the requirements of federal due process.[13]

### General Jurisdiction

Clearly, Bubbles is not subject to general jurisdiction by reason of its limited sales activity in Utah. SIBU argues that the exercise of general personal jurisdiction is appropriate because Bubbles' "website clearly falls within the first *Zippo* category, and therefore general jurisdiction is appropriate." While it is possible for a website to subject the operator of the site to general jurisdiction by selling products to residents of a state this is only the case "when the defendant has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum."[14] No such showing has been made here. The Website does not specifically target residents of Utah, has received only 54 orders from Utah residents, and Bubbles does not operate any salons in Utah.[15]

### Specific Jurisdiction

In order for specific personal jurisdiction to properly be exercised over Bubbles, SIBU must show that (1) defendant's actions or contacts implicate the state's long-arm statute; (2) a nexus exists between the plaintiff's claims and the defendant's actions or contacts; and (3) the application of the state's long-arm statute satisfies the requirements of federal due process.[16]

---

[12] *Id.* at 415.

[13] *Soma Med. Int'l v. Standard Charter Bank,* 196 F.3d 1292, 1297 (10th Cir. 1999).

[14] *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) (quoting *Smith v. Basin Park Hotel, Inc.,* 178 F. Supp. 2d 1225, 1235 (N.D. Okla. 2001)).

[15] Supporting Memorandum at 1.

[16] *Soma,* 196 F.3d at 1297.

1. *Statutory Authority for Service of Process*

Federal Rule of Civil Procedure 4(k)(1)(A) requires this Court to use the Utah long-arm statute to determine if service of process is authorized for state-law claims and when federal statutes do not authorize nationwide service of process.[17]  Utah's long-arm statute states:

> [A]ny person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
> (1) the transaction of any business within this state;
> (2) contracting to supply services or goods in this state;
> (3) the causing of any injury within this state whether tortious or by breach of warranty;. . .[18]

The Utah Supreme Court interprets Utah's long-arm statute broadly to allow personal jurisdiction over non-resident defendants "to the fullest extent allowed by due process of law."[19] In fact, the Utah Supreme Court has stated that "any set of circumstances that satisfies due process will also satisfy the long-arm statute."[20]  Therefore the first prong of the test for specific jurisdiction (satisfying the long-arm statue) collapses into the third (satisfying due process standards).  And for that reason, the Utah Supreme Court often makes the due process analysis first.[21]

2. *Are the Requirements of Federal Due Process Satisfied?*

A two part analysis determines whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause:

---

[17] *Id.*

[18] Utah Code Ann. § 78B-3-205.

[19] *Synergetics v. Marathon Ranching Co., Ltd.*, 701 P.2d 1106, 1110 (Utah 1985).

[20] *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).

[21] *Id.*

4

a. whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there; and

b. whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.[22]

The first test is often referred to as a "minimum contacts" analysis, which is principally focused on the extent to which the "defendant purposefully established minimum contacts within the forum State."[23] At the second stage, the court evaluates the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the states in furthering fundamental substantive social policies.[24]

3. *Minimum Contacts with Utah*

SIBU argues two principal actions Bubbles has taken which establish its minimum contacts with the state of Utah: The Bubbles website and related activity; and the cancellation action Bubbles filed regarding SIBU's marks.

a. *The Website*

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*[25] suggested a framework for analysis of a website to determine whether exercise of specific personal jurisdiction is appropriate. "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to

---

[22] *Pro Axess, Inc. v. Orlux Distrib., Inc.,* 428 F.3d 1270, 1276 (10th Cir. 2005).

[23] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

[24] *Id.* at 477.

[25] 952 F. Supp. 1119 (W.D. Pa. 1997).

the nature and quality of commercial activity that an entity conducts over the Internet."[26] *Zippo* suggests three website categories are helpful in analysis of specific personal jurisdiction.

**Active Website**– An active website is present "where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper."[27]

**Interactive Website** – "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the permissibility of exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."[28] Establishing jurisdiction over interactive websites requires that a defendant "clearly conducts business through its website or emails" plus "something more" to show the defendant's actions were actually directed at the forum.[29]

**Passive Website** – Passive websites involve "situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction."[30]

Bubbles' website at http://www.cibuinternational.com allowed Brooklynn Ellis to visit the website, browse for products, view descriptions of products, and place them into her online

---

[26] *Id.* at 1124.

[27] *Id*.

[28] *Id*.

[29] *Xactware, Inc. v. Symbility Solutions, Inc.*, 402 F. Supp. 2d 1359, 1363 (D. Utah 2005).

[30] *Zippo*, 952 F. Supp. at 1124.

shopping cart; all from a computer in Utah with a Utah IP address.[31] Ms. Ellis was then able to use a credit card with a Utah billing address and purchase three products, which were subsequently shipped to a Utah address.[32]

Bubble admits to 54 sales within Utah since 2007.[33] The $2,486.92 received from these sales constitutes "less than .001% of the $10 million dollars in sales originating from the website since 2007."[34] Bubbles has not directed advertising or sales solicitations at Utah residents. Nothing on the website suggests a targeting of Utah residents. Bubbles connection with Utah via its website is "random," "fortuitous," and "attenuated" and the purchases are the result of "unilateral activity" of the Utah buyers.[35]

    b. *The Cancellation Action*

Bubbles filed a cancellation action against SIBU's marks in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board. "As a general rule, . . . a defendant's reasonable, good faith actions to protect its alleged rights, including transmittal of cease and desist letters and litigation efforts against a forum resident, do not constitute "express aiming" at the forum sufficient to establish the constitutionally required minimum contacts with the forum."[36] Bubbles' petition to cancel some of the SIBU Marks "may demonstrate express aiming at the forum only if they constitute wrongful conduct targeted at the forum resident."[37]

---

[31] Declaration of Brooklynn Ellis in Support of Plaintiff SIBU, LLC's Opposition to Motion to Dismiss, docket no. 20-1, filed August 11, 2011.

[32] *Id.*

[33] Declaration in Support of Motion to Dismiss at 2, docket no. 10, filed June 21, 2011.

[34] *Id.*

[35] *Burger King*, 471 U.S. at 475.

[36] *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004).

[37] *Id.*

Here, the petition to cancel has not been shown to be wrongful, and therefore does not create the required minimum contacts.

   4. *No Nexus Exists*

Even if the website activity and cancellation were sufficient contacts that Bubbles "should reasonably anticipate being haled into court" in Utah, the court must also consider whether the cause of action arose out of Bubbles' purposeful contacts with Utah.

The website does not have such a nexus to this declaratory action. Bubbles' Utah sales activity is not directly related to SIBU's desire to protect its trademarks from an infringement claim. In *Gaither Tool Company, Inc. v. Tire Service Equipment Mfg., Inc.*,[38] the court considered an action for "declaratory judgment for noninfringment and invalidity of the defendant's patent."[39] The court found that the declaratory relief action did not arise out of or relate to the defendant's sales of products in the forum.[40] The same is true in this case.

Similarly, the cancellation action does not establish a nexus, because it is a protection of Bubbles' rights. If the cancellation action could be a nexus, Bubbles would be subjected to jurisdiction in Utah by SIBU's actions in adopting its marks. This would shift control of jurisdiction from the defendant.

Therefore, even if Bubbles' website and cancellation were sufficient minimum contacts, a nexus does not exist between Bubbles actions and this declaratory judgment action.

**Request for Discovery**

SIBU has requested the opportunity to take discovery regarding "the extent to which [Bubbles'] marketing and promotional efforts, both through its website and print publications,

---

[38] 1997 WL 403583 (N.D. Ill. 1997).

[39] *Id.* at *1.

[40] *Id.* at *4.

8

have reached Utah customers."[41] One example of information sought is "the number of times Utah consumers have accessed Defendant's website."[42] However, this information would not establish any purposeful activity by Bubbles. Another example of information sought is "whether other evidence of internet activity was directed at Utah."[43] However, this information should be readily apparent from the website itself. There is no basis for jurisdictional discovery.

## ORDER

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss[44] is GRANTED.

Dated this __5th__ day of December 2011.

BY THE COURT

_____
Magistrate Judge David Nuffer

---

[41] Opposition Memorandum at 4.

[42] *Id.* at 18.

[43] *Id.*

[44] Docket no. 8, filed June 21, 2011.